United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CHINITZ,<br><br>    Plaintiff,<br><br>    v.<br><br>NRT WEST, INC.,<br><br>    Defendant. | Case No.18-cv-06100-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Before the Court is Defendant NRT West, Inc.'s motion to dismiss plaintiff Ronald Chinitz's putative class claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* Chinitz does not oppose dismissal of his UCL claim, but argues that NRT's alleged prerecorded messages, or robocalls, constitute unlawful telemarketing. Because the Court finds that Chinitz has adequately alleged that NRT's prerecorded message had the purpose of encouraging him to purchase a service, the Court GRANTS IN PART and DENIES IN PART NRT's motion to dismiss.

**I.    Factual Allegations and Procedural Background**

On May 17, 2017, Chinitz listed his home for sale on an online real estate listing portal. *See* Dkt. No. 16 ("FAC") ¶¶ 16–17. The listing stated that he did not wish to be contacted directly. *Id.* ¶ 19. After the listing expired, Chinitz began receiving calls from NRT. *Id.* ¶¶ 13, 20–21. During its first call, Chinitz requested that NRT no longer call

him because he was not interested in their services. *Id.* ¶ 22.

NRT continued to call Chinitz using a prerecorded message. *Id.* ¶¶ 23, 25. The message claimed that there was a bad connection and the person would call Chinitz back. *Id.* ¶ 25. After the prerecorded message ended, Chintiz would receive a call from a live person calling on behalf of NRT.[1] *Id.* The individual would then ask Chinitz if he wished to be connected with a regional NRT office. *Id.* ¶¶ 26, 29. According to Chinitz, the purpose of the prerecorded call was to determine whether someone would answer the phone. *Id.* ¶ 25.

Chinitz eventually lodged a complaint with Realogy Holdings Corp., NRT's parent company.[2] *Id.* ¶¶ 14, 29. After receiving his complaint, Realogy contacted Chinitz to take responsibility for the calls. *Id.* ¶¶ 30, 31. Realogy admitted that NRT's agents were reaching out to Chinitz because they were low on inventory and needed to "generate business." *Id.* ¶ 31.

On October 4, 2018, Chinitz initiated this class action. *See* Dkt. No. 1. He amended his complaint on December 14, 2018, alleging putative class claims for (1) calling individuals on the national do-not-call registry, 47 C.F.R. § 64.1200(c)(2); (2) calling individuals on its internal do-not-call registry, 47 C.F.R. § 64.1200(d); (3) using a non-exempt artificial or prerecorded message, 47 U.S.C. § 227(b)(1)(B); and (4) violating the UCL. *See* FAC ¶¶ 55–93.

On January 9, 2019, NRT moved to dismiss Chinitz's third and fourth claims. *See* Dkt. No. 26. Chinitz does not oppose dismissal of his fourth claim under the UCL. *See* Dkt. No. 31 at 11. The motion is fully briefed (*see* Dkt. Nos. 31, 32) and the Court held a hearing on January 30, 2019 (*see* Dkt. No. 33). All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 8, 25.

---

[1] In his amended complaint, Chinitz alleged that the follow-up call solicited business on behalf of Coldwell Banker Residential Brokerage Company. *Id.* ¶¶ 25, 29. Because Chinitz alleged that Coldwell Banker and NRT are one and the same (*see id.* ¶ 13), the Court will refer to both entities as NRT for simplicity.
[2] Realogy is not a party to this lawsuit.

2

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Discussion

The TCPA prohibits the use of automated telephone equipment "to initiate any telephone call to any residential telephone line using an artificial or prerecorded message to deliver a message without the prior express consent of the called party, unless . . . exempted by rule or order by the [Federal Communications] Commission . . . ." 47 U.S.C. § 227(b)(1)(B). Pursuant to its delegated authority, the FCC exempted calls using prerecorded messages that do not "include[] or introduce[] an advertisement or constitute[] telemarketing . . . ." 47 C.F.R. § 64.1200(a)(2); *see also Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012). "Advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services." *Id.* § 64.1200(f)(1). "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person. *Id.* § 64.1200(f)(12).

Applying the prerecorded message rule turns on the purpose of the message, "not on the caller's characterization of the call." *Chesbro*, 705 F.3d at 918 (quoting *In re Rules &*

*Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14098 ¶ 141, 2003 WL 21517853 (F.C.C. July 3, 2003) ("2003 Report and Order"). In *Chesbro*, the Ninth Circuit approached the rule "with a measure of common sense." *Id.* The court rejected arguments that robocalls urging listeners to "redeem" their rewards points on a website were merely informational. *Id.* Because listeners were required to visit a store and make further purchases in order to redeem their points, the calls could only be characterized as advertisements. *Id.* Likewise, the Ninth Circuit held that the caller could not inoculate itself from the TCPA by omitting reference to a specific good, product, or service. *See id.* ("Neither the statute nor regulations require an explicit mention of a good, product, or service where the implication is clear from the context.").

Courts in this district have adopted a similar common-sense approach. In *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-0532-JCS, 2015 WL 3750112, at *5–6 (N.D. Cal. June 15, 2015), the district court held that a referral company violated the TCPA even though it only sought to refer the called party to another entity. Because the TCPA defined telephone solicitations as "*any* call 'for the purpose of encouraging [a] purchase,'" it necessarily included calls to encourage purchases with a different entity or in the future. *Id.* (quoting 47 U.S.C. § 227(a) (emphasis added)); *see also* 2003 Report and Order at 14040 ¶ 142.

Here, Chinitz challenges NRT's prerecorded message stating that there was a bad connection and someone would call him back. *See* FAC ¶ 25. This prerecorded message is prohibited under the TCPA. Chinitz alleged that each time he received NRT's prerecorded message, a live person would follow up on behalf of NRT to attempt to sell its real estate brokerage services. *See id.* ¶¶ 25, 26. He also alleged that an agent of NRT admitted to placing the robocalls in order to generate business. *Id.* ¶ 31. From these facts, the Court can plausibly infer that the purpose of the calls was to encourage the purchase of NRT's services, *i.e.*, telemarketing.

NRT argues that the Court should limit its purpose-of-the-call analysis to the call

4

itself. The Court disagrees. In its implementing regulations, the FCC clarified that the TCPA reached prerecorded messages that "includes or *introduces* an advertisement or constitutes telemarketing." 47 C.F.R. § 64.1200(a)(2) (emphasis added). This language makes clear that the TCPA reaches prerecorded messages that do not constitute advertisements or telemarketing themselves. Rather, the entire context of the robocall, including messages conveyed after the robocall, must be considered. Here, there is no dispute that the live follow-up call by NRT constitutes telemarketing. Because the prerecorded message always precedes the live follow-up call, it "introduces" the telemarketing call and is prohibited under the TCPA.

Moreover, common sense dictates that NRT's robocall falls within the purview of the TCPA. *See Chesbro*, 705 F.3d at 918 ("We approach the problem with a measure of common sense."). The prerecorded message is designed to determine whether someone would answer the phone. The sole purpose of such a message is to allow NRT to pitch its brokerage services to the called party. *See* FAC ¶ 31 (quoting NRT representative as asking "How else are we supposed to generate business?"). Thus, the prerecorded message was made "for the purpose of encouraging the purchase" of NRT's brokerage services. 47 C.F.R. § 64.1200(f)(12).

Accordingly, the Court DENIES NRT's motion to dismiss Chinitz's third claim under the TCPA. Because Chinitz does not oppose NRT's motion to dismiss his UCL claim, the Court GRANTS NRT's motion to dismiss Chinitz's fourth claim under the UCL.

**IV. Conclusion**

The Court GRANTS IN PART and DENIES IN PART NRT's motion to dismiss. Chinitz's fourth claim under the UCL is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: February 20, 2019     _____
NATHANAEL M. COUSINS
United States Magistrate Judge