UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD CHINITZ, <br> Plaintiff, <br> v. <br> NRT WEST, INC., d/b/a Coldwell Banker Residential Brokerage Company, <br> Defendant. | Case No. 18-cv-06100-NC <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** <br><br> Re: Dkt. No. 60 |

In this class action, plaintiff Ronald Chinitz accuses defendant NRT West ("NRT"), Inc., of making unlawful robocalls. Chinitz now seeks to certify three nationwide classes. *See* Dkt. No. 60. For two of those classes, Chinitz failed to present any evidence to establish numerosity. And for all of his proposed classes, Chinitz failed to present sufficient evidence to establish a common question. Accordingly, the Court DENIES Chinitz's motion for class certification.

**I. Background**

  **A. Factual Background**

NRT, more commonly known as Coldwell Banker Residential Brokerage, is a residential brokerage company. *See* Dkt. No. 60-6 ("Robinson Depo.") at 14:14–18. NRT operates regional offices, where it contracts with local realtors or "sales associates." *Id.*; *see also* Dkt. No. 60-12. In NRT's Palo Alto office, NRT has hired over 100 current or

former sales associates since 2014. *See* Dkt. No. 61-5 at 4–11. Similar Coldwell Banker entities operate throughout the United States. *See* Robinson Depo. at 23:23 – 25:18.

In 2003 and 2018, Chinitz placed his landline and VOIP numbers on the national do-not-call registry, respectively. *See* Dkt. No. 60-2, 60-3. In 2017, after Chinitz placed his home in Santa Cruz, California on an online real estate listing portal for sale, he received unwanted calls on behalf of NRT sales associates. *See* Dkt. No. 61-14 ("Chinitz Depo.") at 59:6–14; *see also* Dkt. No. 60-12. One of those associates was Matt Christensen. *See id.* at 145:10–20. After receiving those calls, Chinitz asked the caller to not call him back, but he continued to receive unwanted calls. *See* Dkt. No. 60-4 at 3. On more than one occasion, Chinitz received calls using a prerecorded message. *See id.*

According to Christensen, it was common practice in the industry to use third-party services or online listings to gather lists of prospective real estate clients and to use those lists to call prospective clients. *See* Dkt. No. 60-5 ("Christensen Depo.") at 62:14–64:13. Although NRT provided various onboarding documents regarding cold calling practices, Christensen did not receive any specific training regarding the requirements of the National Do-Not-Call Registry. *Id.* at 71:12–72:20. Likewise, Christensen had access to NRT's internal do-not-contact lists, but did not use those lists to screen his calls. *Id.* at 74:1–18. Christensen also used third-party services to call homeowners on his behalf. *Id.* at 84:10–85:1.

### B. Procedural History

On October 4, 2018, Chinitz initiated this putative class action alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* Dkt. No. 1. He amended his complaint on December 14, 2018, alleging putative class claims for (1) calling individuals on the national do-not-call registry, 47 C.F.R. § 64.1200(c)(2); (2) calling individuals on its internal do-not-call registry, 47 C.F.R. § 64.1200(d); (3) using a non-exempt artificial or prerecorded message, 47 U.S.C. § 227(b)(1)(B); and (4) violating the UCL. *See* Dkt. No. 16 ("FAC") ¶¶ 55–93. On February 20, 2019, the Court dismissed Chinitz's UCL claim. *See* Dkt. No. 42. Chinitz now moves to certify three classes:

**National Do-Not-Call Registry Class ("NDNC Class")**: All persons in the United States who: (a) received more than one call made by one of NRT's real estate agents on NRT's behalf or by another agent of NRT on NRT's behalf; (b) promoting NRT's goods or services; (c) in a 12-month period; (d) on their residential telephone line; (e) whose residential telephone number(s) appear on the DNC; (f) at any time since October 4, 2014.

**National Internal Do-Not-Call Class ("IDNC Class")**: All persons in the United States who: (a) received more than one call made by one of NRT's real estate agents on NRT's behalf or by another agent of NRT on NRT's behalf; (b) promoting NRT's goods or services; (c) in a 12-month period; (d) on their residential telephone line; (e) who made a request not to receive calls from or on behalf of NRT; (f) at any time since October 4, 2014.

**National Prerecorded Message Residential Class ("Prerecorded Message Class")**: All persons in the United States to whom: (a) one of NRT's real estate agents on NRT's behalf, or another agent of NRT on NRT's behalf, initiated one of more non-emergency telephone calls; (b) promoting NRT's goods or services; (c) to a recipient's residential telephone line; (d) through the use of an artificial or prerecorded voice; (e) at any time since October 4, 2014.

*See* FAC ¶ 43. Chinitz seeks both monetary relief and injunctive relief. *See id.* at 15–16. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 8, 25.

## II. Legal Standard

As the party seeking certification, the plaintiff bears the burden of demonstrating compliance with Federal Rule of Civil Procedure 23 by a preponderance of the evidence. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The plaintiff must satisfy the four prerequisites of Rule 23(a) and one of the three requirements of Rule 23(b). *Id.*; *see also Civil Rights Educ. & Enforcement Ctr. v. Hosp. Props. Trust*, 867 F.3d 1093, 1103 (9th Cir. 2017).

3

1   Rule 23(a) requires plaintiffs to demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Chinitz seeks to certify three classes under Rule 23(b)(2) and Rule 23(b)(3). *See* Dkt. No. 60 at 18. To certify a Rule 23(b)(2) class, the plaintiff must also show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). To certify a Rule 23(b)(3) class, the plaintiff must also show that "questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance); and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority). Fed. R. Civ. P. 23(b)(3).

Class certification analysis "may entail some overlap with the merits of the plaintiff's underlying claim." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (internal citations and quotations omitted). "That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 569 U.S. at 33–34 (internal citations and quotations omitted). However, the ultimate goal of Rule 23 is to determine whether efficiency and justice are best served by the plaintiff pursuing his claims on behalf of a class as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701(1979)).

**III. Discussion**

    **A.  Federal Rule of Civil Procedure 23(a)**

Federal Rule of Civil Procedure 23(a) requires Chinitz to demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of

4

law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

### 1. Numerosity

As the first Rule 23(a) requirement, Chinitz must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To determine practicality of joinder, courts consider: "(1) the number of individual class members; (2) the ease of identifying and contacting class members; (3) the geographical spread of class members; and (4) the ability and willingness of individual members to bring claims . . ." *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. 12-cv-5080-CRB, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013). The Ninth Circuit has not offered a precise numerical standard; district courts generally hold, however, "that the numerosity requirement is usually satisfied where the class comprises 40 or more members, and generally not satisfied when the class comprises 21 or fewer members." *Id.*

Chinitz has not offered sufficient evidence to demonstrate numerosity for the proposed IDNC class or the Prerecorded Message class. Chinitz relies solely on the expert report of Anya Verkhovskaya. *See* Dkt. No. 60-8. Verkhovskaya, however, merely describes her intended methodology and does not provide any opinion regarding the number of individuals that may be part of the IDNC class or Prerecorded Message class. *See id.* at 8–9. This is insufficient to satisfy Chinitz's burden on class certification. Chinitz's reliance on two out-of-circuit cases is unavailing. *See* Dkt. No. 69 at 8. Both cases are distinguishable. In *Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017), the plaintiffs provided a rough estimate regarding the number of class members. And in *Reyes v. BCA Financial Services, Inc.*, No. 16-cv-24077, 2018 WL 3145807, at *9 (S.D. Fla. June 26, 2018), numerosity was not in dispute. Thus, Chinitz fails to demonstrate numerosity as to the IDNC and Prerecorded Message class.

As to the NDNC class, Verkhovskaya opined in her initial report that 19 of 60 sampled phone numbers dialed by Christensen were on the NDNC. *See id.* at 8. And in

5

reply, Verkhovskaya supplemented her analysis after analyzing over 400 numbers called by Christensen, finding that 49 of those numbers would fit the NDNC class definition. *See* Dkt. No. 69-24 at 2–3. A class of 49 satisfies the numerosity requirement. *See Twebge*, 2013 WL 3802807, at *2.

NRT briefly argues that the Court should disregard Verkhovskaya's opinion because she failed to account for whether any of Christensen's calls were personal in nature. However, Christensen redacted personal calls from the phone records he produced to Chinitz. *See* Dkt. No. 69-2 at 3.

In sum, Chinitz has satisfied the numerosity requirement as to the NDNC class, but not the IDNC and Prerecorded Message classes. Accordingly, the Court DENIES class certification as to the IDNC class and Prerecorded Message class.

### 2. Typicality

Typicality requires that the named plaintiff's individual claim is "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This standard is "permissive," and claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Chinitz is typical. He registered his phone numbers on the national do-not-call registry (*see* Dkt. No. 60-2, 60-3), but was called by an NRT associate against his wishes. This is the same injury suffered by other members of the NDNC class.

NRT offers two arguments in opposition but neither are persuasive. First, NRT argues that Chinitz lacks standing because he registered his VOIP number after he was called. *See* Dkt. No. 61 at 25. But Chinitz was called on both his VOIP number *and* his landline, which was registered in 2003. *See id.*; Dkt. No. 69-19. Second, NRT also argues

6

that Chinitz gave express consent to be called by listing his VOIP number on his real estate listing. Even if the Court assumes that Chinitz's listing constitutes express consent to be called on his VOIP number, that listing does not constitute consent as to Chinitz's landline. *See* 16 C.F.R. § 310.4(b)(1)(iii)(B)(1) (express consent requires a written agreement that "include[s] the telephone number to which the calls may be placed").

### 3. Adequacy

The plaintiff must also show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy requires that (1) the proposed class representatives and their counsel do not "have any conflicts of interest with other class members"; and (2) the proposed class representatives and their counsel must "prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020).

Here, NRT attacks Chinitz's adequacy largely on the grounds that he was unable to recall certain details with regards to the unwanted calls and that he is a frequent litigant. Such attacks are not well received. *See Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 582–83 (N.D. Cal. 2018). The alleged calls were placed over a year ago and being a serial or professional plaintiff is generally not grounds for inadequacy. *See id.*

Rather, there is no evidence of conflicts of interest between Chinitz and the proposed class members. And Chinitz's counsel are experienced class action litigators. *See* Dkt. No. 60-11. Accordingly, the Court finds that Chinitz and his counsel are adequate representatives.

### 4. Commonality

Next, Rule 23(a)(2) requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires more than simply whether class members have suffered a violation of the same provision of law. *See Wal-Mart*, 564 U.S. at 350. Rather, "[c]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza v. Am. Honda Motor*

7

*Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (alteration in original) (quoting *Wal-Mart*, 564 U.S. at 350). "What matters to class certification [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). "Commonality only requires a single significant question of law or fact." *Mazza*, 666 F.3d at 589.

Here, Chinitz seeks to hold NRT liable for its sales associates' allegedly unlawful phone calls to individuals on the national do-not-call registry. Whether NRT is vicariously liable turns on whether an agency relationship exists between NRT and its associates. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877–78 (9th Cir. 2014), *aff'd* 136 S. Ct. 663, 674 (2016). Chinitz asserts that NRT is liable because it controls the manner and means of its associates' work (*see Jones v. Royal Admin. Servs.*, 887 F.3d 443, 450 (9th Cir. 2018) (outlining ten-factor test to determine agency relationship)) and its associates had apparent authority (*see Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014) (citing *In re DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6590 n.124 (2013)).

Whether NRT had an agency relationship with its sales associates is ostensibly a common question. But Chinitz has not provided sufficient evidence showing that the proposed classwide proceeding has "the capacity . . . to generate common *answers*." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). Rather, "[d]issimilarities in the proposed class"—*i.e.*, the fact that each class member was called by different NRT associates—has "the potential to impede the generation of common answers." *Id.* NRT may exert different levels of supervisory control over its associates, such that it is vicariously liable for the actions of some associates, but not others.

The cases Chinitz cites provides an illustrative contrast. In *Kristensen v. Credit Payment Services*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014), for example, the court found that vicarious liability was a common question. But there, the plaintiffs sought to prove that a payday lender was vicariously liable for two of its contractors' actions. *Id.* at 1297. Generating common answers was fairly simple—plaintiffs only needed to prove two agency relationships. Here, by contrast, Chinitz seeks to hold NRT responsible for the

actions of *every one* of NRT's associates. Absent a preponderance of evidence that NRT's relationship with its associates can be determined across the board, Chinitz has not satisfied the commonality requirement.

Similarly, Chinitz's reliance on California law to assert that NRT is automatically vicariously liable for its associates' actions is unpersuasive. *See* Dkt. No. 69 at 11 (citing Cal. Code Regs. tit. 10 § 2725). Even if California law in fact requires NRT to supervise its associates' sales activities, Chinitz seeks to certify a nationwide class, which necessarily includes individuals who received calls by associates that may not be governed by California law. And Chinitz has not shown that California law should apply in this case. *See In re Hyundai*, 926 F.3d at 561–62.

Of course, Chinitz has provided some evidence to establish the existence of common questions. That evidence, however, is currently too limited. The sample sales associate agreements, for example, state that NRT's relationship with its associates is an independent contractor relationship and shines no light on the level of control exercised by NRT. *See* Dkt. No. 69-12. Chinitz provides no evidence of a broader practice by NRT's associates; he only submits evidence of Christensen's practice. Likewise, Chinitz offers evidence of Christensen's knowledge of NRT's Do-No-Contact policy, but it is unclear if NRT actually mandates training as to its Do-Not-Contact policy or some other level of control over its associates. *See, e.g.*, Dkt. No. 69-14.

In short, Chinitz has identified common questions, but has not shown by a preponderance of evidence that common answers exist to those questions. Because Chinitz fails to demonstrate all four requirements of Rule 23(a), the Court does not address the requirements of Rule 23(b).

**IV. Conclusion**

Because Chinitz fails to meet his burden of proof, the Court DENIES Chinitz's motion for class certification.

**IT IS SO ORDERED.**

Dated: August 30, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge